UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

In re:
Sojourn Active Vacations, Inc.,
d/b/a Sojourn Bicycling & Active Vacations,

Debtor.

Case No. 26-10293-hzc
Chapter 11 (Subchapter V)

**DECLARATION OF BAIDEHI MUKHERJEE**

I, Baidehi Mukherjee, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare that the following is true and correct:

1. I am the sole shareholder and President of Sojourn Active Vacations, Inc. d/b/a Sojourn Bicycling and Active Vacations ("Sojourn") and, as such, am familiar with its financial affairs.

2. On November 3, 2026 (the "Petition Date"), I caused a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to be filed on behalf of Sojourn.

3. I will soon be filing the Debtor's Application to Employ Fisher Law Offices, PLLC as Counsel to Debtor (the "Employment Application") to be filed as well.

4. This Declaration is submitted in support of both the Chapter 11 petition and the soon-to-be filed Employment Application.

5. All facts set forth in this Declaration are based upon my personal knowledge, upon my review of relevant documents, or on my opinion, based on my experience and knowledge of Sojourn's finances as its sole shareholder and President.

## I. The Debtor's Background Information

### A. Overview of the Debtor

6. Pursuant to Vt. LBR 1007-1(h)(1), the following describes the nature of the Debtor's financial situation and a concise statement of the circumstances leading to the Debtor's chapter

11 filing.

7. The Debtor is a Vermont corporation. The Debtor's formation documents were filed with the Vermont Secretary of State's Office on December 15, 2004. The Debtor's mailing address is 166 Athletic Drive, Suite 4, Shelburne, Vermont 05482, which also serves as the Debtor's principal office address. The Debtor has one shareholder, its President, Baidehi Mukherjee.

8. The Debtor does not own any real estate.

9. The Debtor is a boutique, family-owned and operated active travel company with more than twenty years of experience creating guided cycling vacations. Its bike tours cross the United States, Canada, Europe and Asia and are known for combining memorable riding experiences, high-end accommodations, regional flavors and full support.

10. The Debtor's business is distinguished by its unscripted and spontaneous trip leaders, a world class fleet of light, responsive and comfortable bicycles, and unique trip designs providing immersive and life-list-worthy experience to even the most seasoned active traveler.

11. The Debtor presently has one part-time employee, aside from me, and roughly fifteen (15) tour leaders Sojourn will engage to run various tours.

12. The Debtor's typical calendar year sees significant fluctuation between incoming revenue concentrated around the winter holiday season and early in the calendar year with expenditures peaking in during the spring/summer season that its trips occur.

13. The Debtor staffs its reservation and customer service line from 9:00am – 6:00pm, Mondays through Fridays.

**<u>Events Leading to the Chapter 11 Filing</u>**

14. Like many businesses regardless of industry, Sojourn revenues varied because of

the COVID-19 pandemic; as travel restrictions eased, its gross revenue stabilized during the past three to four years.

15. 2026 revenue is down, however, due mainly to the uncertainly surrounding the political climate in the United States and culminating in today's midterm elections.

16. I have had discussions with numerous customers who were interested in booking 2027 trips with Sojourn but who are awaiting the results of the elections before confirming their plans.

17. A significant portion of our customer base relies upon the financial markets and the fluctuations in those markets in making their near-future travel plans; far too many this year have indicated they would likely be booking their 2027 trips in mid- or late-November or December than in prior years.

18. All the secured business debt Sojourn carries was incurred before this year's overall revenues decrease and remaining current on existing obligations has become impossible without additional bookings.

19. Sojourn is now in a position where, the lack of cash flow in recent months and the anticipated revenues in the coming month or two are at a point where Sojourn for the first time cannot meets many of its obligations, including various credit card minimums and some of this past year's hotel accommodations.

20. As a direct result, Sojourn made the decision to file the instant Chapter 11 case with an to lower its secured debt obligations, shed much of its unsecured debt, improve near term cash flow and permit Sojourn to stave off liquidation and closure in a very competitive industry.

**B. Pre-Petition Secured Debt**[1]

**United States Small Business Administration**

21. The United States Small Business Administration (the "SBA") has a security interest in all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code, and extending to all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relating thereto which Sojourn owns by virtue of a U.C.C. Financing Statement filed with the Vermont Secretary of State on May 13, 2020, and a timely filed continuation amendment to that U.C.C. Financing Statement filed with the Vermont Secretary of State on May 9, 2025.

22. Accordingly, I believe the SBA has a valid, binding, perfected and enforceable security interest in the above-described collateral.

**Cycling Sports Group**

23. Cycling Sports Group, Inc. ("CSG") has a purchase money security interest in collateral described as:

---

[1] Cadence Bank ("Cadence") is a party to a loan made to the Debtor's parent company, Wanderulst Adventures, Inc. ("Wanderlust"); the loan was not made to Sojourn. Cadence filed a U.C.C. Financing Statement on October 11, 2023 against collateral owned by Wanderlust, however, there is no security agreement with Sojourn, and nothing has been perfected against assets owned by Sojourn. Accordingly, I believe that Cadence is an unsecured creditor as to Sojourn for purpose of this Chapter 11 case.

> in all inventory of goods and merchandise, materials and equipment now held or hereafter sold by [CSG] to [Sojourn] bearing the tradename(s) Cannondale, GT, Schwinn and Mongoose of [CSG] and all additions and accessions thereto or therefore and any proceeds thereof or therefrom including but not limited to accounts receivable, promissory notes, installment contracts, contract rights, chattel paper and instruments arising therefrom

which Sojourn owns by virtue of a U.C.C. Financing Statement filed with the Vermont Secretary of State on November 4, 2014 and a timely filed continuation amendment to that U.C.C. Financing Statement filed with the Vermont Secretary of State on July 10, 2019 and May 20, 2024.

24. Accordingly, I believe CSG has a valid, binding, perfected and enforceable security interest in the above-described collateral.

**National Bank of Middlebury**

25. The National Bank of Middlebury ("NBM") has a purchase money security interest in a 2017 Chevrolet Express which Sojourn owns and which is evidenced by a notation on the Certificate of Title naming NBM as the first lienholder on the vehicle. Accordingly, I believe NBM has a valid, binding, perfected and enforceable security interest in the above-described collateral.

**Ally Bank**

26. Ally Bank ("Ally") has a purchase money security interest in a 2019 Ford Transit Wagon, VIN: 1FBZX2ZM1KKB10720 which Sojourn owns by virtue of a Retail Installment Sale Contract and Security Agreement and which is also evidenced by a notation on the Certificate of Title naming Ally as the first lienholder on the vehicle.

27. Accordingly, I believe Ally has a valid, binding, perfected and enforceable security interest in the above-described collateral.

**Ford Motor Credit**

28. Ford Motor Credit Corporation ("Ford") has a purchase money security interest in a 2022 Ford T350 Transit Van, VIN: 1FBAX2YGXNKA67069 which Sojourn owns by virtue of a Retail Installment Sale Contract and Security Agreement and which is evidenced by a notation on the Certificate of Title naming Ally as the first lienholder on the vehicle.

29. Accordingly, I believe Ford has a valid, binding, perfected and enforceable security interest in the above-described collateral.

## C. Pre-Petition Unsecured Debt

30. Sojourn's unsecured debt mainly consists of credit card charges, loans/lines of credit and unpaid hotel accommodations, all of which total roughly $620,000.00 in anticipated claims.

## II. The Necessity for Filing

31. As described in further detail above, the instant bankruptcy became necessary when, due a confluence of events involving reduced international travel caused by a various geopolitical events, the political climate preceding today's midterm elections and the uneasiness and uncertainly over which its results will impact the financial markets.

32. This confluence has caused a cash flow shortage like Sojourn has never seen in its two prior decades in the industry.

33. I do not believe there is any alternative but to restructure Sojourn's financial affairs in via Chapter 11 at present.

## III. The Employment Application

34. Sojourn has been working with Fisher Law Offices, PLLC during the past three to four months to understand the benefits and restrictions of the Chapter 11 process and the validity and extent of the claims against it.

35. It is in Sojourn's best interests to employ Fisher Law Offices, PLLC as its bankruptcy counsel in this Chapter 11 case.

## IV. <u>Vt. LBR 1007-1(h)</u>

36. The following information is provided pursuant to Vt. LBR 1007-1(h)(2)-(7).

37. This case was not filed under any other chapter of the Bankruptcy Code. Vt. LBR 1007-1(h)(2).

38. No committee was organized prior to the order for relief. Vt. LBR 1007-1(h)(3).

39. The Debtor is a Vermont corporation and owns no share of stock, debentures or securities that are publicly held. Vt. LBR 1007-1(h)(4).

40. Sojourn owns no property which is in the possession or custody of a custodian, public officer, mortgagee, pledgee, assignee of rents, receiver, secured creditor, or the agent of any of these entities and no court proceeding related thereto is pending. Vt. LBR 1007-1(h)(5).

41. There are currently no civil actions to which Sojourn is a party. Vt. LBR 1007-1(h)(6).

42. As of the Petition Date, Sojourn claims no ownership interest in any real estate. Vt. LBR 1007-1(h)(7).

Remainder of page intentionally left blank

I certify under penalty of perjury that the foregoing is true and correct.

Dated: Hanover, New Hampshire
November 3, 2026

Baidchi Mukherjee